IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Bon-Ing, Inc.,
et al.,

      Plaintiffs,

  v.                          Case No. 2:16-cv-710

Richard Hodges, et al.,

      Defendants.

OPINION AND ORDER

    This is a civil rights action brought pursuant to 42 U.S.C. §1983. Plaintiff Bon-Ing, Inc. ("Bon-Ing"), an Ohio corporation, formerly operated a skilled nursing facility in Gahanna, Ohio, known as the Bon-Ing Care and Rehabilitation Center ("the facility"). Plaintiff Jennie Ingram Calloway is the president and sole shareholder of Bon-Ing. On June 21, 2016, plaintiffs filed a complaint in the Franklin County Court of Common Pleas against Richard Hodges in his official capacity as director of the Ohio Department of Health ("ODH"), an agency of the State of Ohio, and Lance D. Himes in his official capacity as interim director of ODH. On July 21, 2016, defendants filed a notice of removal of the action to this court. On July 27, 2016, defendants filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the action for failure to state a claim for which relief may be granted. On August 19, 2016, plaintiffs filed an amended complaint which specified that defendants Hodges and Himes were being sued in their individual/personal capacities.

    In their amended complaint, plaintiffs alleged that from March, 2014, through September, 2014, defendants and ODH issued a series of citations against the facility which misrepresented facts

and exaggerated the seriousness and extent of the facility's reported violations. Plaintiffs contended that defendants acted with the purpose of terminating plaintiffs' license to operate the facility and convincing the Center for Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS"), to end plaintiffs' participation in the Medicare/Medicaid Programs. Plaintiffs alleged that defendants did not want Mrs. Calloway to own and operate the facility because she is an African American. Amended Complaint, ¶ 14. Plaintiffs asserted that defendants evaluated the facility differently than similarly-situated facilities owned and operated by Caucasians and gave the facility less time to correct deficiencies. Amended Complaint, ¶¶ 15, 18, 21-22. Plaintiffs alleged that Interim Director Himes improperly recommended to CMS that the facility be placed on a Special Focus Facility ("SFF") list and that plaintiffs' participation in the Medicare/Medicaid Programs be terminated. Amended Complaint, ¶¶ 17, 24.

Plaintiffs further alleged that license revocation notices were sent by Interim Director Himes on July 30, 2014, and August 8, 2014, and by Director Hodges on September 26, 2014, which were based on false and unfounded conclusions regarding the facility's noncompliance with applicable laws. Amended Complaint, ¶ 23. Plaintiffs contended that in August, 2014, CMS terminated plaintiffs' right to participate in the Medicare/Medicaid Programs because of defendants' racially motivated false statements and recommendations. Amended Complaint, ¶¶ 24-25. Plaintiffs alleged that the facility's license was wrongfully revoked by Director Hodges on March 24, 2016. Amended Complaint, ¶ 7.

This matter is before the court on defendants' motion pursuant to Rule 12(b)(6) to dismiss the amended complaint for failure to state a claim for which relief may be granted.

I. Rule 12(b)(6) Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiffs, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  In addition, "a motion for dismissal pursuant to Rule 12(b)(6) will be granted if ... the claim shows on its face that relief is barred by an affirmative defense." Riverview Health Institute LLC v. Medical Mutual of Ohio, 601 F.3d 505, 512 (6th Cir. 2010). Where the complaint contains matters of avoidance that effectively vitiate the pleader's ability to recover on the claim, "'the complaint is said to have a built-in defense and is essentially self-defeating.'" Id. (quoting 5B Wright & Miller, Federal Practice & Procedure §1357 (3d ed.2004)).  The defense of absolute immunity presents a legal question which can be raised by a motion to dismiss under Rule 12(b)(6). Bright v. Gallia County, Ohio, 753 F.3d 639, 648 (6th Cir. 2014).

II. Consideration of Exhibits Attached to Motion to Dismiss

Defendants have attached several documents to their motion to dismiss, including: (1) a July 30, 2014, notice letter from Interim Director Himes to Bon-Ing, Calloway and Timothy Johnson, the

3

facility administrator, proposing to revoke the facility's license based on statutory and regulatory violations (Doc. 17-1); (2) an August 8, 2014, notice letter from Interim Director Himes to Bon-Ing, Calloway, and Johnson identifying additional violations (Doc. 17-2); (3) a September 26, 2014, notice letter from Director Hodges notifying Bon-Ing, Calloway, and Facility Administrator Kenneth Daily, of the proposed revocation of Bon-Ing's license based on new and uncorrected violations (Doc. 17-3); (4) the February 8, 2016, report and recommendation of ODH Hearing Officer Linda F. Mosbacher (Doc. 17-4); (5) the March 24, 2016, adjudication order of Director Hodges adopting the report and recommendation (with one exception) and revoking Bon-Ing's license (Doc. 17-5); (6) the April 15, 2014, CMS notice of immediate imposition of remedies sent to Johnson and signed by Gregg Brandush, Branch Manager of the CMS Long Term Care Certification and Enforcement Branch (Doc. 17-6); and (7) the July 15, 2014, CMS notice of continuation of previously imposed remedies, imposition of additional remedies, and termination of plaintiffs' participation in the Medicare and Medicaid Programs effective August 14, 2014, which was sent to Johnson and signed by Brandush. Plaintiffs argue that these documents cannot be considered by the court in ruling on the motion to dismiss.

In evaluating a motion to dismiss, a court generally is limited to the complaint and exhibits attached thereto. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001). However, courts may consider matters of public record. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)(a court ruling on a motion to dismiss may consider public records, matters

4

of which a court may take judicial notice, and letter decisions of governmental agencies). The court may consider a document or instrument which is referred to in the complaint and is central to the plaintiff's claim. Bassett v. National Collegiate Athletic Ass'n 528 F.3d 426, 430 (6th Cir. 2008); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). If extrinsic materials merely "fill in the contours and details" of a complaint, such materials may be considered without converting the motion to one for summary judgment. Yeary v. Goodwill Indus-Knoxville, Inc., 107 F.3d 443, 445 (6th Cir. 1997). However, the court can only take judicial notice of facts not reasonably in dispute. Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005).

The amended complaint specifically refers to the notices issued by defendants on July 30, 2014, August 8, 2014, and September 26, 2014, see Amended Complaint, ¶ 23, which are attached to the motion to dismiss as Documents 17-1 to 17-3. The amended complaint also alleges that plaintiffs' license was wrongfully revoked by Director Hodges on March 24, 2016. This allegation implicitly refers to the March 24, 2016, agency adjudication order of Director Hodges, attached as Document 17-5, which adopted the February 8, 2016, report and recommendation of the hearing officer (attached as Document 17-4) and revoked Bon-Ing's license. The amended complaint also includes allegations regarding defendants' recommendations to CMS regarding the designation of plaintiffs' facility as an SFF facility and CMS's termination of the facility's participation in Medicare and Medicaid. Amended Complaint, ¶¶ 17, 24-26. The CMS correspondence attached as Documents 17-6 and 17-7 relate to these allegations. In particular, plaintiffs allege that

5

CMS terminated plaintiffs' right to participate in the Medicare Program in August, 2014, see Amended Complaint, ¶25, an action which is documented in the CMS termination notice filed as Document 17-7.

The court finds that the attached documents are central to plaintiffs' claims, and "fill in the contours and details" of the amended complaint. Yeary, 107 F.3d at 445. These documents are also the public records of state and federal administrative agencies, and include agency decisions. Plaintiffs do not dispute that the documents are genuine. The court finds that these documents may be considered without converting the motion to dismiss to one for summary judgment. However, the court will only consider these documents in determining defendants' entitlement to absolute immunity, insofar as they may assist the court by clarifying the nature of the administrative proceedings described in the complaint and defendants' function in those proceedings.

III. Defense of Absolute Immunity

A. Doctrine of Absolute Immunity

Defendants argue that the claims against them must be dismissed because they are protected from suit under the doctrine of absolute quasi-judicial or quasi-prosecutorial immunity.

"It is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions." Foster v. Walsh, 864 F.2d 416, 417 (6th Cir. 1988); see also Mireles v. Waco, 502 U.S. 9, 9-10 (1991). "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their

jurisdiction, and are alleged to have been done maliciously or corruptly." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872); see also Bright, 753 F.3d at 648-552 (holding that judicial immunity barred §1983 action for money damages even though the judge's actions were "petty, unethical, and unworthy of his office" and Ohio Supreme Court sanctioned the judge for his behavior). "This immunity ... is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554-55 (1967)(applying the doctrine of judicial immunity to §1983 actions). Litigants can protect themselves from judicial errors through the appellate process or other judicial proceedings without resort to suits for personal liability. Forrester v. White, 484 U.S. 219, 226-27 (1988). The Supreme Court has also held that a prosecutor is entitled to absolute immunity from money damages in §1983 actions for any acts associated with his professional role in deciding which suits to bring and in conducting them in court. Imbler v. Pachtman, 424 U.S. 409, 423-28 (1976).

In Butz v. Economou, 438 U.S. 478 (1978), the Supreme Court extended the protection of absolute immunity to administrative agency officials. The Court noted that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." Id. at 512-13. The Court observed that the role of a federal hearing examiner or administrative law judge is functionally comparable to

7

that of a judge, and held that persons "performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts." Id. at 513-14. The Court further stated:

> We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.... The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete.

Id. at 515. The Court noted that an administrator's decision to proceed with a case is subject to scrutiny by an independent hearing officer, and that any claims that the proceeding is unconstitutional may also be heard on judicial review by the courts. Id. at 515-16. The Court held that agency officials "who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." Id. at 516.

The Sixth Circuit considered the applicability of the doctrine of quasi-judicial immunity to state administrative officials in Watts, M.D. v. Burkhart, M.D., 978 F.2d 269 (6th Cir. 1992)(en banc). In that case, an African-American physician brought a §1983 action against members of the Tennessee Board of Medical Examiners, alleging that he was treated differently from similarly-situated non-minority physicians in regard to the surrender of his medical license. The Sixth Circuit concluded that the public policy

8

embodied in the doctrine of absolute immunity warranted the application of that doctrine, even in the face of plaintiff's allegations of racial prejudice, where the board members were performing quasi-prosecutorial or quasi-judicial functions, the potential for vexatious lawsuits was great, and protections for physicians' rights like those provided by the federal Administrative Procedures Act were in place under Tennessee law. Id. at 274-78.

In deciding whether an official is entitled to absolute immunity, the court looks to the nature of the function performed, not the identity of the actor who performed it. Collyer v. Darling, 98 F.3d 211, 221 (6th Cir. 1996). The court must determine: (1) whether the agency official performs a traditional prosecutorial or adjudicatory function, i.e., does he decide facts, apply law, and otherwise resolve disputes on the merits; (2) whether the official initiates or decides cases sufficiently controversial that, in the absence of immunity, he would be subject to numerous damages actions; and (3) whether the official prosecutes or adjudicates disputes against a backdrop of safeguards designed to protect the individual's constitutional rights. Williams, D.D.S. v. Michigan Board of Dentistry, 39 F. App'x 147, 148-49 (6th Cir. 2002); see also Quatkemeyer v. Kentucky Board of Medical Licensure, 506 F. App'x 342, 346-349 (6th Cir. 2012). In Williams, the Sixth Circuit concluded that the defendant board members were entitled to absolute immunity on plaintiff's disability discrimination claims where: (1) they were responsible for determining whether there had been a violation of statutory standards of conduct and what appropriate sanctions may be imposed,

9

and thus performed an adjudicatory function; (2) the members decided cases which were sufficiently controversial that, in the absence of immunity, they would be subject to damages actions; and (3) the members adjudicated disputes against a backdrop of safeguards designed to protect an individual's constitutional rights. <u>Williams</u>, 39 F. App'x at 149.

<u>B. Immunity Doctrine Analysis - Revocation of License</u>
<u>1. First Factor - Nature of Function</u>

The defendants are the director and previous interim director of the Ohio Department of Health. Under Ohio Rev. Code §3721.03(B), the director of health has the authority to enforce the provisions of Chapter 3721, which govern skilled nursing facilities. Under that section, the director may issue orders to secure compliance with Chapter 3721, hold hearings, issue subpoenas, compel testimony, and make adjudications. §3721.03(B). The director may also issue an order revoking a skilled nursing facility's license if he finds that the facility has violated any of the provisions of Chapter 3721, or if other grounds for revocation specified in §3721.03(B) have been satisfied. §3721.03(B). Thus, the director decides in the first instance whether there has been a violation of Chapter 3721 warranting the issuance of a revocation notice, and makes the final decision at the administrative level on issues of fact and law. <u>See</u> Ohio Rev. Code §119.09 (report and recommendation of hearing officer not final until approved by the agency). The authority vested in the director to find statutory and regulatory violations, to propose the revocation of plaintiffs' license based on his consideration of

information from ODH investigations, to initiate administrative proceedings, and to make adjudications demonstrates the type of independent, discretionary authority that characterizes prosecutorial and judicial action.  See Quatkemeyer, 506 F. App'x at 347.

The notice letters in this case constituted an exercise of the director's statutory authority.  In the July 30, 2014, and August 8, 2014, notice letters, Interim Director Himes notified plaintiffs that he proposed to issue an order revoking plaintiffs' license to operate the facility in light of violations allegedly discovered during ODH investigations.  Doc. 17-1, p. 1; Doc. 17-2, p. 1.  The letters advised plaintiffs of their right to request a hearing, and stated that if a hearing was not requested, an order would be issued revoking plaintiffs' license.  Doc. 17-1, p. 2; Doc. 17-2, p. 2.  A similar notice dated September 26, 2014, was sent to plaintiffs by Director Hodges.  After plaintiffs requested a hearing, the matter was referred by Director Hodges to a hearing officer, who heard testimony and received evidence.  The hearing officer issued a report and recommendation on February 8, 2016, recommending that the director issue an order revoking plaintiffs' license.  See Doc. 17-4.  On March 24, 2016, Director Hodges issued an adjudication order adopting the report and recommendation and revoking plaintiffs' licence.  See Doc. 17-5.  The court concludes that defendants' function was prosecutorial and/or adjudicatory in nature, and that the first criteria for absolute immunity is satisfied in this case.

2. Risk of Exposure to Damages Actions

The court concludes that the second factor has also been

11

satisfied in this case, as the licensing of skilled nursing facilities is an area which has the potential of subjecting the director to numerous actions for damages.  The instant case, in which plaintiffs seek money damages of no less than $2.65 million, provides an example of the type of financial stake involved in the ownership and operation of a skilled nursing facility.  Damage suits could also be brought by clients of a skilled nursing facility who are displaced as the result of a license revocation, or who suffer injury as the result of a statutory violation committed by the facility after a decision was made not to revoke the facility's license.  Qualified immunity is warranted to ensure that the director can make important decisions concerning the licensing of a facility and the safety of its residents without fear of litigation.

3. Existence of Adequate Procedural Safeguards

Under §3721.03, the director may issue an order revoking a facility's license only after affording the facility a hearing or opportunity to be heard pursuant to Ohio Rev. Code Chapter 119. Ohio Rev. Code §3721.03(B).  After the issuance of a revocation order under §3721.03(B), the licensee has the right to appeal in accordance with Chapter 119.  Ohio Rev. Code §3721.03(B).  Chapter 119 requires that the party be given notice of the right to a hearing.  Ohio Rev. Code §119.07.  The agency can designate a hearing examiner, who must be a licensed attorney.  Testimony and evidence may be presented at the hearing.  The hearing officer must issue a report and recommendation, to which the parties may object. Ohio Rev. Code §119.09.  At the hearing, the party may be represented by an attorney.  Ohio Rev. Code §119.13.  An appeal

from an adverse agency decision may be taken to the court of common pleas, and the judgment of the court of common pleas may be appealed to the court of appeals. Ohio Rev. Code §119.12. Constitutional issues may be raised on appeal from Chapter 119 proceedings. See Clayton v. Ohio Board of Nursing, 2016-Ohio-643, 2016 WL 744394 at *7 (2016)(ruling on plaintiff's due process argument while reviewing agency action); Erie Care Center, Inc. v. Ackerman, 5 Ohio App.3d 102, 104 (1982)(rejecting the constitutional argument made by facility in appeal from revocation of license by ODH director). The Sixth Circuit has held that the procedures mandated by Ohio Chapter 119 satisfy the absolute immunity requirement for adequate procedural safeguards. See Lundeen v. State Medical Board of Ohio, Nos. 12-3090 and 12-2350, 2012 WL 10235344 at *3 (6th Cir. Oct. 17, 2012). The third factor for immunity is met in this case.

4. Allegations Concerning Recommendations to CMS

Plaintiffs also alleged in their amended complaint that defendants issued citations based on false information with the goal of convincing CMS to terminate plaintiffs' participation in the Medicare and Medicaid programs.[1] Plaintiffs further allege that defendant Himes improperly recommended to CMS that the facility be placed on the SFF list.

CMS has the authority to designate a facility as a SFF due to

---

[1] Although these allegations refer to "the Defendants," see Amended Complaint, ¶ 14, they only apply to defendant Himes, who was interim director until August 11, 2014. By letter dated July 15, 2014, CMS notified plaintiffs that their participation in the Medicare/Medicaid program was being terminated effective August 14, 2014. See Doc. 17-7. Thus, CMS had already made its termination decision prior to August 11, 2014, when defendant Hodges assumed his position as director.

the facility's poor compliance history. <u>Autumn Health Care of Zanesville, Inc. v. U.S. Dept. of Health & Human Servs.</u>, 959 F.Supp.2d 1044, 1047 (S.D.Ohio 2013). When a facility is placed in the SFF program, it receives two standard surveys (inspections) per year instead of one. <u>Id.</u> CMS has delegated the task of inspecting nursing homes for violations of applicable rules to state health agencies, such as ODH, which employ nurses, nutritionists, and other health professionals. <u>Park Manor, Ltd. v. U.S. Dept. of Health & Human Servs.</u>, 495 F.3d 433, 435 (7th Cir. 2007). If the state agency reports to CMS that it has found violations, "CMS can forthwith impose sanctions, such as civil penalties and denial to the nursing home of reimbursement for the expenses of new residents." <u>Id.</u> The facility can challenge the sanctions, and the ruling of the first-level decider, an administrative law judge, is reviewable by the HHS Departmental Appeals Board. <u>Id.</u> If the facility is dissatisfied with the Board's decision, it may seek judicial review of that decision. <u>Perry County Nursing Center v. U.S. Department of Health & Human Servs.</u>, 603 F. App'x 265, 267 (5th Cir. 2015).

  The same absolute immunity analysis applies to defendant Himes' role in making recommendations to CMS. The first factor is satisfied, because, in making his recommendations to CMS, defendant Himes performed a prosecutorial function by considering the survey results to determine if there had been a violation of statutory and regulatory standards before making a recommendation to CMS. <u>See</u> <u>Williams</u>, 39 F. App'x at 149; <u>see also</u> <u>Quatkemeyer</u>, 506 F. App'x at 347 (the challenged acts, "such as relying upon wrong analyses and false allegations, are prosecutorial in nature"). The second

14

factor, the risk of vexatious damages actions, is also satisfied. A facility's financial ability to operate may well depend on its eligibility to obtain Medicare and Medicaid reimbursement.  ODH officials who make recommendations to CMS are likely to be sued by nursing facilities for damages resulting from the revocation of their participation in the Medicare and Medicaid Programs. Finally, CMS's decision is subject to review under the Administrative Procedures Act, and is also subject to judicial review, thus satisfying the third requirement of the existence of adequate safeguards to protect plaintiffs' constitutional rights. Defendant Himes is entitled to absolute immunity for acts performed in his capacity as a state agency advisor to CMS.

5. Immunity Determination

The pleadings establish that defendants are entitled to the defense of absolute immunity.  Plaintiffs' amended complaint fails to state a claim for which relief may be granted.  In light of this ruling, the court need not address the remaining arguments made by defendants in support of their motion to dismiss.

IV. Conclusion

In accordance with the foregoing, defendants' motion to dismiss the amended complaint (Doc. 17) is granted.  Defendant's motion to dismiss the original complaint (Doc. 6) and defendants' objection (Doc. 21) to the magistrate judge's September 14, 2016, order staying discovery are moot.  The clerk shall enter judgment dismissing this case.

Date: November 14, 2016            s/James L. Graham
                                   James L. Graham
                                   United States District Judge